Judge Owsley
delivered the opinion of the court.
James Harrod on the 20th May, 1780, made, with the proper surveyor, the'following entry:—
“20Ih May, 1780,. — James Harrod, assignee, &c. enters “1000 acres of land upon a treasury warrant, on the north “side of the Knob Lick, including half the said lick, adjoining Samuel Moore’s settlement right, and around the “same.”
And on the 13th March, 1781, withdrew it as follows:
“James Harrod withdraws his entry of 1000 acres on “the north side of the Knob Lick, adjoining Samuel Moore’s “settlement.”
And on the same day located it as follows:
^ March 13th, 1781 — James Harrod enters 1000 acres “upon a treasury warrant, on the north side of Samuel *141 “Moore’s settlement, and east end thereof, extending north “and east for quantity.”
This location Harrod caused to be surveyed; and finally in June, 1782, obtained the patent in his own name.
Subsequent to this, Harrod sold and conveyed part of the land to the appellee”, Warren, and part to a certain Miller, who thereafter sold the same to a certain Willis Green, and the appellee Dodd, and Miller have actually conveyed to Green the land sold to him; and Green having departed this life, his title has passed by his will to his children, the other appellees.
The purchasers of Harrod having thus obtained the title, settled upon the land; and tfie possession so acquired by them, has been continued down to the present time.
To obtain from the appellees a surrender of their title, thus derived through Harrod, and to obtain from the heiress of Harrod, (he having departed this’ life) a-conveyance for the moiety of the tract not disposed of by him, the appellant exhibited his bill in the court below.
He charges the entry, although made in the name of Harrod, was in trust for the use and benefit of his deceased father, Samuel Moore; — a'ledges the appellees, the purchasers, had full knowledge of the trust before tney made the purchase; and asserts his right as heir to his father Samuel Moore.
He moreover charges, that his father, Samuel, obtained from the commissioners a certificate for settlement and preemption in the following words:
“November 10, 1779. Samuel Moore this day claimed a settlement and pre-emption to a tract of land lying on the north side of Knob Lick, including the half of said lick, by improving the same in the year 1776, and residing in the county twelve months before the year 1778, satisfactory proof, &c. the said Moore has a right to a settlement of 400 acres of land, including the said improvement, and the pre-emption of 1000 acres adjoining, &c.”
This certificate of settlement he alledges was entered with the surveyor as follows:
“June 24, 1780. Samuel Moore enters 400 acres upon “a certificate of settlement, lying on the north side of the “Knob Lick, including half the said lick.”
And the pre-emption -warrant he also states was entered as follows:
“July 18, 1780. Samuel Moore enters a pre-emption *142 “warrant, adjoining his settlement, agreeable to a survey “made by James Douglass of the same.”
This pre-emption entry, he moreover charges, was after the death of his father, withdrawn by James Howard and Mary Moore, the administrators of his father’s estate, as follows:
“December 17, 1781. The administrators of the estate “of Samuel Moore dec. withdraw his pre-emption warrant, “laid adjoining his settlement made agreeable to a survey “made by James Douglass of the same, the land being already surveyed and the warrants received out of the office “by James Harrod.”
The withdrawal thus made, the appellant alledges to have been without authority, and fraudulent; and that the warrant was concealed by Harrod, until the year 1789, when it was discovered and again entered for him, upon the same ground, from which it had been previously with* drawn.
After the re-entry in 1789, the appellant further charges, that a survey was executed, and the same carried into grant; and his counsel now contends that the entry of Moore in 1780, is a valid one, and as it is of prior date to the latter entry in the name of Harrod, he insists that whatever might be the appellant’s success in asserting a claim exclusively under the entry in the name of Harrod, he cannot be prejudiced bv the fraudulent withdrawal by the administrators of his ancestor, and that under his superior equity derived through the entry of 1780, in the name of his father, the appellees should be compelled to surrender their elder claim.
The appellees. Dodd, Green and Warren, admit nothing in favor of the appellant’s right to relief; and severally rely upon their being purchasers for a valuable consideration without notice.
Fanllcroy and his wife, who appears to be the heiress pf Harrod, by their ansv/er deny the right of the appellant to more than five hundred acres; but for that much they admit, that under an agreement between Samuel Moore, in his lifetime, and Harrod, he is entitled, and alledges the same has been conveyed to him and in his possession for a considerable length of time.
Upon a hearing in the court below, the appellant’s bill as to Dodd, Green and Warren, was dismissed; but as to Fantleroy and his wife, an interlocutory decree was pro- *143 bounced in favor of the appellants; and from that decree the appellant has appealed to this court; but as no final decree appears to have been entered as to Fantleroy and wife, the case, as to them, is not now properly before this court.
A purcha-deranonfrom a tm tee, 8c the trust, will be protected,
To affect a. purchaser Wg should know that ’-he cestui rethe property.— Hard, 37.
A pnrcha-tf,re ^ay protect himself under the in£?sCl^vendor*' i Atk 571, Bradlyn vs. 243-’ Ambler 313'.
The plea ofpnrchasing without no-ver prevailo vera superb dev'1 an^ ad verredistinct claim.
*143 Whether, therefore, the appellant should have relief against those in whose favor his bill was dismissed, is the only inquiry now properly presented for consideration.
Relief is sought against them, as we have already shewn, 1st, upon the ground of the entry in the name of Harrod having been made in trust for the use and benefit of the appellants’ ancestor.
But, whether the proof and exhibits sufficiently manifest that charge, we have not thought i^ material to examine, because, if they did, still we should be of opinion, the ap-pellees, as purchasers for a valuable Consideration and without notice, ought not to be compelled to surrender their legal title.
Both Green and Warren are shewn to have perfected their title, and paid the purchase money, long before the commencement of this suit; and with respect to Green, there is not the slightest circumstance, proven in the cause, conducing to shew, he purchased with notice of the appellants’ claim.
The evidence, in relation to Warren, admits of more doubt; but we are of opinion it is not sufficiently strong to fix upon him notice of Moore’s claim, under the entry in the name of Harrod. Some of the witnesses do, it is true, speak of his knowing, when he made the purchase of Har-rod, that the land was part of Moore’s pre-emption; hut as he might have had that knowledge, without having known Moore claimed any interest in Harrod’s entry, we cannot from thence infer, he purchased with a knowledge of Moore having such a claim.
With respect to Dodd, although he appears not to have received a title, yet, as he holds under Miller, who seems to be a purchaser without notice, he is most clearly entitled to protection under Miller’s title.
As the appellees, therefore, occupy the favored ground, of purchasers for a valuable consideration without notice, it is clear they cannot be compelled to surrender their elder title, on account of any latent equity growing out the entry of Harrod, and' to which the ancestor of the ap-peiliant may have been entitled.
But if, as was contended in argument, the appellant has *144 shewn himself entitled to the superior equity, deduced un* der an adverse claim, it is equally clear the appellees cannot claim protection on account of their being purchasers without notice.
The with-entry* by 1' person with out compe-t^does'no't prejudice the entry.
tratOTs^have no r ght to impair an in-far.t’s claim of the hues'-tate.
ifl forl private su* vev not of record, is not that1’ survey was notorious, or the entry m nself contains oth-ercails which are sufficient.
tick.” is not an object notorfo™Tn the absence of proof.
we are lead to examine the claim of the appellant, asserted under the entry of his ancestor, made in 1780.
In entering upon this examination, it may be proper to remar''’ that although the entry appears to have been withdrawn by the administrators of Samuel Moore, deceased, that withdrawal, as it was clearly made without authority, cannot prejudice the claim of the appellant,
Upon the decease of Samuel Moore, the right which was invested in him by the entry, descended upon the appellant as h¡s heir, and by no act of the administrators, could that right be thereafter in any manner impaired,
The claim of the appellant must, therefore, be considered, regardless of the withdrawal, and as the survey sub-secluen% marie conforms strictly to the calls of the entry, his right to relief turns exclusively upon the validity of the entry. ,
The entry, as has been already observed, calls to adjoin Moore’s settlement, agreeable to a survey made by James Douglass.
"^he survey of Douglass called for, is proven to have been made before the date of the entry, but as it was not then of record, and it is not proven to have been notorious, the entry depending upon it cannot be sustained, unless, as was contended in argument, by the description contained in the settlement entry, such information is afforded, as would conduct an inquirer with so much precision into the v¡c¡nity 0f the survev, as to enable him with certainty to ¿ -, , J * 7 J
The settlement entry, wc do not, however, suppose, is shewn to contain such information. It does,sit is true, call f°r the Knob Lick, and as the survey made by Douglass is not very remote, from that place, if the lick was proven to been notorious, by the aid of the entry of the settle-raenL an inquirer would have been conducted into the vi-cinitv of the survey. But the evidence in the cause, is clearly insufficient to prove the lick notorious, and we cannot judicially say, in the absence of proof, that the lick, at the date of the entry, possessed the requisite degree of notoriety to maintain an entry depending upon it; and, consequently, wo cannot say that even with the aid of the *145 description contained in the settlement entry, an inquirer could even have been conducted to the neighborhood Douglass’s survey. Hence we are constrained to say the appellant has failed to manifest his claim under the entry of his ancestor.
In the argument of this cause, on that branch of it relating to the propriety of presuming the Knob Lifek to be notorious, Mr. Talbot observed, that no one could doubt the future historian of Kentucky would notice the Knob Lick, an object presenting to the view, one of the most remarkable monuments of art on the face of the country, and one of the greatest natural curiosities within its bounds; nor can any believe, that such an object was unknown at the stations in its vicinity. In the case of Bodley and Hart, Harden’s Rep. page 98, the court ascribed notoriety to the Lower Blue Licks, from their connexion with the general history of the country; and Leestown, in another cause, for the same reason, was held notorious, thb’ at Lees-town there was but one cabin, occupied by a single family, and who \veye soon expelled by the Indians.
Gen. Hardin, in reply, remarked that there was, in this cause, no proof of the notoriety of the Kriob Lick, Or any thing to distinguish it from the innumerable licks scattered over the country, nor should it be presumed notorious from any intimate connection with our history. lie thought the court had gone fully far enough in presuming notoriety — his own opinion was, that only those objects should be deemed notorious, (in the absence of proof to that effect,) which had been recognised by statute, as streams dividing counties and the like, or navigable waters. The public archives furnish the proper evidence of those objects, I which are connected with the history of the country It is submitted to the reader to decide from the manner the court notice this part of the subject, whether they are disposed to extend the cases where notoriety will be presumed. In this case, the question was brought directly before them.
The decree of the court below must, therefore, be affirmed with cost.